UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
IDEARC MEDIA LLC, f/k/a IDEARC
MEDIA CORP. f/k/a VERIZON
DIRECTORIES CORP.,

                Plaintiff,                            09CV4628 (JG) (ALC)

                                                    <u>REPORT AND
RECOMMENDATION</u>

       v.

ALEX FIGLIOLIA CONTRACTING
CORP.,

                Defendant.
--------------------------------------------------X

**CARTER, UNITED STATES MAGISTRATE JUDGE:**

       The Honorable John Gleeson referred this matter to the undersigned for a Report and

Recommendation on plaintiff's motion for default judgment. Based on plaintiff's submissions,

and for the reasons below, I recommend entering default judgment against defendant as to

liability and deferring ruling as to damages and attorneys' fees, pending plaintiff's submission of

additional documentary support.


<u>BACKGROUND</u>


       Plaintiff Idearc Media, LLC, formerly operating under the names Idearc Media

Corporation and Verizon Directories Corporation ("Plaintiff" or "Idearc") is a Delaware

corporation with its principal place of business in Dallas/Fort Worth Airport, Texas. At the time

of the events alleged in the complaint, Plaintiff operated an online directory at Superpages.com

and published the Verizon Yellow Pages Directories. Defendant Alex Figliolia Contracting Corp

("Defendant" or "Figliolia") is a New York corporation with two places of business, both within

the Eastern District of New York. The parties entered into a series of contracts whereby Defendant obtained advertising space in several directories published by Idearc, to wit: the 2007 Verizon Yellow Pages Directory for Brooklyn; the 2007 Verizon Yellow Pages Directory for Queens; the 2007 Verizon Yellow Pages Directory for Manhattan; the 2007 New York Business Yellow Pages Directory; the 2008 Verizon Yellow Pages Directory for Brooklyn; the 2008 Verizon Yellow Pages for Queens; the 2008 Verizon Yellow Pages Directory for Manhattan; and the 2008 Verizon New York Business Yellow Pages Directory (the "Directories"). Defendant also contracted for advertising space in four direct mailings issued by Plaintiff in Brooklyn and Queens between November 2007 and August 2008, as well as for advertising space on Plaintiff's website, Superpages.com (collectively, the "Advertising Contracts").

The parties agreed to monthly charges ranging from $3822.60 to $13,434.50 per month for advertising in the Directories, $1,350 per month for the directing mailings and $2,221-2,428 per month for advertising on Superpages.com. (Complaint ¶¶13, 21, 29, 33, 44.) The agreements also gave Idearc sole discretion to accelerate the payments or to "require other billing arrangements at its discretion" and to assess late fees to overdue balances at a rate of 18% per annum.

As agreed, Plaintiff published Defendant's advertisements in its Directories, on its website and via direct mailings. However, Plaintiff alleges that Defendant failed to pay any of the contracts in full. While Figliolia submitted payments in response to most of Idearc's monthly invoices, the payments sometimes failed to add up to the monthly charges, and Figliolia remained in arrears after expiration of each of the Advertising Contracts. On February 9, 2009, a month before Idearc filed a petition for Chapter 11 bankruptcy, it sent a demand to Figliolia for payment of $600,588.58, the amount claimed to be overdue. Figliolia failed to remit that

payment, and on October 27, 2009, Idearc filed the instant complaint ("Complaint") alleging breach of contract and unjust enrichment.  Idearc seeks damages in the amount of $949,311.81, representing $749,056.20 in advertising fees (some of which were incurred subsequent to the February 9, 2009 demand letter); $171,545.61 in late charges; $537.50 in costs; and $28,172.50 in attorneys' fees.  Figliolia was properly served but failed to answer or move in any regard with respect to the Complaint.  On March 31, 2010, the Clerk of the Court entered default against Figliolia.

## DISCUSSION

On a motion for default judgment brought pursuant to Federal Rule of Civil Procedure 55(b) ("Rule 55(b)"), the Court takes the well-pleaded allegations of the Complaint as true. Greyhound Exhibitgroup v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Cablevision Sys. of New York City Corp. v. Torres, No. 02 CV 7602 (AJP), 2003 WL 22078938, at *3 (S.D.N.Y. Sept. 9, 2003).  "The court is to exercise sound judicial discretion" in determining whether the entry of default judgment is appropriate.  Baidan v. Brandaid Comm. Corp., No. 03 CV 2424 (DC), 2004 WL 1933573, at *2 (S.D.N.Y. Aug. 30, 2004).  "A factual allegation will be deemed not well-pled only in very narrow, exceptional circumstances." Verizon Directories Corp. v. AMCAR Transp. Corp., No. 05 CV 8867 (GBD) (RLE), 2008 WL 4891244, at *2 (S.D.N.Y. Nov. 12, 2008) (citations omitted).  Although the well-pleaded factual allegations of the complaint will be taken as true, the court must still analyze those facts for their sufficiency to state a claim. See Telequip Corp. v. Change Exch., No. 01 CV 1748 (FJS)(GJD), 2004 WL 1739545, at *1 (N.D.N.Y. 2004).

*Liability*

To state a claim for breach of contract, Plaintiff must establish the existence of a contract, its own performance of the obligations thereunder, breach of the contract by Defendant, and damages. See Terwilliger v. Terwilliger, 206 F.3d 240, 245-6 (2d Cir. 2000); see also Lewis v. Bank of Amer., N.A., 343 F.3d 544-5 (5th Cir. 2003). Here, Plaintiff's Complaint has successfully alleged that Figliolia contracted to advertise in the Directories; that the advertisements were in fact published in the Directories; and that the full amounts due Plaintiff under those contracts were not paid. Accordingly, Plaintiff has established Defendant's liability for breach of contract. See Verizon, 2008 WL 4891244, at *2 (entering default judgment as to liability where defendant failed to make full payment on a series of advertising contracts); Verizon Directories Corp. v. Ostad, No. 05 CV 4887 (SLT) (KAM), 2008 WL 2783358, at *3 (E.D.N.Y. July 15, 2008) (finding defendants liable for failure to remit payment for various Verizon advertising services).

*Damages*

While the Court must accept as true the well-pleaded allegations in the complaint for the purpose of determining liability under Rule 55(b), the same is not true with respect to damages. See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 154-5 (2d Cir. 1999). "[T]he district court cannot simply rely on the plaintiff's statement of damages; there must be a basis upon which the court may establish damages with reasonable certainty." House v. Kent Worldwide Machine Works, Inc., No. 09 CV 146, 2010 WL 10020, at * 1 (2d Cir. Jan. 4, 2010). Proof of damages must therefore be based on admissible, authenticated evidence. House, 2010 WL 10020, at *1 (collecting cases). The court may rely on affidavits or documentary evidence

in evaluating the fairness of the damages requested. See Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993); Chun Jie Yin v. Kim, No. 07 CV 1236 (DLI)(JO), 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008) (collecting cases). However, the party seeking damages must show "that the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." Gallagher v. Medeikon Corp., No. 08 CV 535 (SLT) (ALC), 2011 WL 841370, at * 2 (E.D.N.Y. Mar. 8, 2011).

In this case, Plaintiff claims breach of contract damages in the amount of $920,601.81. As alleged in the Supplemental Affidavit of Nancy Logue ("Logue"), an employee of SuperMedia, LLC (the successor entity to Idearc), this amount consists of $749,056.20 in unpaid advertising charges, plus $171,545.61 late charges accrued at a rate of 16.56% annum. (See Logue Aff. ¶ 6.) Also included are invoices submitted with the affidavit of Steven Snow, another collection specialist employed by SuperMedia. The Snow Affidavit contains all of the invoices sent to Figliolia from February 2007 to March 2010. (Snow Aff. Ex 2.) In February 2007, when Idearc began to bill for the earliest of the disputed contracts, Idearc was already $226,028.10 in arrears. (Ex. 2 to Snow Aff.) That $226,028.10 is not the subject of this action, since it does not relate to any of the Advertising Contracts. Nevertheless, the amounts paid by Figliolia beginning with the first payments under the invoices at issue were first applied to those unrelated arrearages. Logue's Affidavit explained that it is Idearc's policy of applying payments to past-due charges instead of to the current amounts charged. (Logue ¶ 18.)

However, were those amounts applied to the Advertising Contracts at issue, rather than toward separate agreements between the parties, the amount of damages due would be significantly less, particularly because interest payments on Idearc's late fees would have to be

accordingly adjusted.[1]  Moreover, on March 4, 2011, I held a telephonic conference at which I asked Plaintiff's counsel to justify this method of billing.  In its supplemental submission, Plaintiff directed the Court to the following language:

> Billing.  The Publisher may, at its sole discretion, require partial or full payment for [Figliolia's] advertising before it is published.  Otherwise, Publisher will bill me monthly for the number of months the Directory is in circulation for the applicable advertising charges as provided in Section 25.  However, Publisher may agree or require other billing arrangements at its discretion.  Monthly billing may begin before a Print Directory is fully distributed and may continue after delivery of the next issue of the Print Directory has commenced.  I will pay all bills for advertising by the due date on the bill.

(See  Complaint Exs. A-C, sections 26; see also Complaint Ex. D at Section 5.)  This language is insufficient to permit the conclusion that the arrearages on separate, unrelated contracts were permissibly reconciled with amounts theoretically applicable to current charges.

Accordingly, I recommend denying Plaintiff's motion as to damages, pending the submission of authority for this billing practice or, in the alternative, a recalculation of appropriate damages using the $361,133.46 difference between amounts billed under the Contracts and amounts paid by Figliolia during the time period in question, per footnote no. 1 herein.  Such recalculation shall also update the amount due as interest and indicate the source of the method used to measure that interest.

---

[1] For example, during the period in question, Figliolia made a total of $645,129.30 in payments.  Save interest, the total amount of fees charged for the contracts was $1,006,262.72, leaving Figliolia with an outstanding balance of $361,133.46, not $749.056.20 as calculated by Plaintiff.  (Logue Aff. ¶¶ 6-20.)  Late fees for an overdue balance of $749,056.20 would be much different than for a number less than half that amount.

## CONCLUSION

For the foregoing reasons, I recommend the entry of default against Figliolia as to liability under the Advertising Contracts. I also recommend holding in abeyance Plaintiff's motion for damages pending further documentary evidence of its calculation and/or an inquest on damages. SO ORDERED.

DATED: March  30, 2010                 _____/s/_____
       Brooklyn, New York                     Andrew L. Carter, U.S.M.J.